[Cite as *State v. Wing*, 2023-Ohio-4171.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-03-022 |
| | : | O P I N I O N |
| - vs - | | 11/20/2023 |
| | : | |
| LEO E. WING, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM FAIRFIELD MUNICIPAL COURT
Case No. 2022 CRB 02562

Michael T. Gmoser, Butler County Prosecuting Attorney, and John C. Heinkel, Assistant Prosecuting Attorney, for appellee.

Maria L. Rabold, for appellant.

**M. POWELL, J.**

{¶ 1} Defendant-Appellant, Leo Wing, appeals his convictions in the Fairfield Municipal Court for assault and aggravated menacing. For the reasons discussed below, we affirm his convictions.

{¶ 2} Jefferey Denier was leasing a home at 5978 Morningside Dr., Fairfield, Ohio

45014 from his mother (hereinafter the Home), where he lived with his brother and S.D. his-13-year-old son. Denier's mother is married to Wing. Sometime prior to September 7, 2022, Denier's mother and Wing advised Denier to vacate the Home. By September 2, 2022, Denier was residing in another residence, but some of his personal belongings, such as a flat screen television, remained in the Home. Denier claimed he did not "officially" move out of the Home until September 22, 2022.

{¶ 3} On September 7, 2022, Denier and S.D. returned to the Home to retrieve his personal belongings. Unbeknownst to Denier, Wing had changed the locks. Unable to access the Home, Denier left the premises and went to the police department to solicit help from the police. Denier and two police officers contacted Denier's mother who declined to grant permission for Denier to enter the Home and retrieve his personal belongings.

{¶ 4} Denier and S.D. later returned to the Home. As Denier pulled his car up to the Home, he observed Leo outside and then run into the Home and lock the door. Denier then walked around to the rear of the Home and was able to open a window to gain entry. The blinds to the window were drawn closed. As Denier attempted to enter the Home, he was met by Wing and a struggle ensued. During the altercation, S.D. approached the window and Wing grabbed his arm. In seeking to escape Wing's grasp, Wing scratched S.D.'s arm. S.D. took off running and Wing jumped out of the window and chased S.D. around the Home. During the altercation, according to Denier, Wing was threatening Denier and S.D. Denier specifically recalled Wing saying to S.D. as he grabbed S.D.'s arm, "I'm going to get you too."

{¶ 5} S.D. ran around the house and called 9-1-1. On the 9-1-1 recording, Wing can be heard screaming, "You get the fuck out of here" and "I'm going to knock the shit out of you." S.D. initially testified that he could not remember Wing making any threats directed at him or his father. However, in the 9-1-1 recording, S.D. told the operator that Wing was

threatening to kill him, and S.D. testified about how scared he was and his fears that Wing was going to hurt him and his father.

{¶ 6} When police arrived on the scene, they observed Denier and Wing in the doorway. Denier came out to meet the police while Wing retreated into the Home and attempted to close the door before he was detained by police. Denier told the police that Wing had assaulted him.

{¶ 7} On September 7, 2022, Leo Wing was charged in the Fairfield Municipal Court with felonious assault against Denier and with assault and aggravated menacing against S.D. On September 9, 2022, two days after the altercation between Denier and Wing, Denier's mother filed a complaint to have Denier evicted from the Home.

{¶ 8} A preliminary hearing was held, and the matters were bound over to the Butler County Grand Jury. On November 8, 2022, the grand jury returned a no bill on the felonious assault charge and certified the misdemeanor assault and aggravated menacing charges to the municipal court. A bench trial on these charges was held on January 26-27, 2023.

{¶ 9} At trial, Wing's testimony contradicted that of other witnesses. Wing testified he had changed the locks on the Home on September 7, 2022 at the direction of his attorney, John Clemmons. By contrast, his friend Sean Howard, who had been doing some work on the Home, testified that the locks had already been changed no later than September 2, 2022. Mr. Clemmons testified that when he spoke to Wing on September 6, 2022, he did not give Wing instructions, but merely explained that if Wing intended to retake possession of the Home due to abandonment, he should change the locks. Wing made no indication to Clemmons that he had already done so. At trial, Wing claimed both Howard and Clemmons were mistaken.

{¶ 10} The trial court discounted Wing's testimony as not credible, relied upon the testimony of Denier and S.D. and found Wing guilty as charged.

{¶ 11} Wing appealed his convictions, raising three assignments of error for our review.

{¶ 12} Assignment of Error No. 1:

{¶ 13} APPELLANT'S CONVICTION OF ASSAULT AND AGGRAVATED MENACING WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 14} Assignment of Error No. 2:

{¶ 15} THE STATE'S EVIDENCE WAS INSUFFICIENT TO SATISFY ITS BURDEN TO PROVE EACH AND EVERY ELEMENT OF ASSAULT AND AGGRAVATED MENACING BEYOND A REASONABLE DOUBT.

{¶ 16} In his first and second assignments of error, Wing claims his convictions for both assault and aggravated menacing were against the manifest weight of the evidence and were not supported by sufficient evidence. We disagree. For ease of discussion, we will address these assignments of error together.

{¶ 17} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Intihar*, 12th Dist. Warren No. CA2015-05-046, 2015-Ohio-5507, ¶ 9. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In other words, "the test for sufficiency requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34, citing *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 33. When evaluating the sufficiency of the evidence, this court must "defer to the trier of fact on questions of credibility and the weight assigned

- 4 -

to the evidence." *State v. Kirkland*, 140 Ohio St. 3d 73, 2014-Ohio-1966, ¶ 132.

{¶ **18**} On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Blair*, 12th Dist. Butler No. CA2014-01-023, 2015-Ohio- 818, ¶ 43.

{¶ **19**} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Nevertheless, although the two concepts are different, a finding that a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of sufficiency. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19. Therefore, "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 43.

*Assault*

{¶ **20**} Appellant was convicted of assault in violation of R.C. 2903.13(A), which provides, "No person shall knowingly cause or attempt to cause physical harm to another

or to another's unborn." Pursuant to R.C. 2901.22(B), "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." "Physical harm" means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). A victim's testimony is all that is needed to "sustain a conviction for assault in violation of R.C. 2903.13(A) if the victim's testimony proves all the elements of the offense." *State v. Lunsford*, 12th Dist., Butler No. CA2019-07-116, 2020-Ohio-965, ¶ 13.

{¶ 21} Wing claims there is no evidence that he caused the scratch on S.D.'s arm other than S.D.'s testimony, which was inconsistent and therefore not credible. Wing further argues there was insufficient evidence that he acted knowingly, as he could not know that grabbing S.D.'s arm would result in a scratch. Additionally, Wing suggests that he was defending himself from Denier, and therefore his conduct with regard to S.D. was self-defense, but no such argument was asserted at trial.

{¶ 22} It is well established that "issues not raised in the trial court may not be raised for the first time on appeal because such issues are deemed waived." *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, ¶ 9. Wing may not hold his self-defense arguments in reserve for appeal, and thus evade the trial court process. Even if such arguments had been properly preserved, "Ohio courts have long recognized that a defendant is at fault in creating the situation giving rise to the affray when the defendant chooses to confront the victim or knowingly go to a place where the victim will be, even when the defendant's action was otherwise completely lawful." *State v. Elam*, 12th Dist. Butler No. CA2021-08-106, 2022-Ohio-1895, ¶ 15. On September 7, 2022, Denier had not been legally evicted and therefore still had a right to access the home. Wing and his wife did not even file an eviction complaint until September 9, 2022, two days after the altercation, and Denier's personal property was still at the Home. Yet, when Wing saw

Denier arrive at the house, Wing ran inside, locked the door, and immediately attacked Denier as soon as Denier stepped through the rear window. Wing's conduct amounted to "self-help" in contravention of Ohio's landlord-tenant laws, and Wing was at fault in creating the confrontation with Denier. Wing's self-defense arguments are both waived and entirely without merit.

{¶ 23} S.D. testified that Wing reached out through the window to grab him, and that he sustained the scratch in trying to extricate himself from Wing's grasp. To be sure, there were some inconsistencies and discrepancies in S.D.'s testimony and between his testimony and statements he made during the 9-1-1 call. The trial court, in evaluating S.D.'s testimony, took into consideration that he was only 13 years old and confronted with a frightening and rapidly escalating situation. However, other evidence corroborated S.D.'s testimony on its important aspects. It was clear that S.D. suffered a scratch on his arm as there was documentary evidence of it. Additionally, the 9-1-1 call recording confirms that Wing was around S.D. when he was talking with the 9-1-1 dispatcher and making threats. The evidence supports the trial court's conclusion that Wing acted knowingly when he engaged in conduct that resulted in S.D.'s arm sustaining a scratch.

{¶ 24} Wing's assault conviction was supported by sufficient evidence and the manifest weight of the evidence.

### Aggravated Menacing

{¶ 25} The aggravated menacing statute, R.C. 2903.21(A), provides that "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family."

{¶ 26} To prove aggravated menacing, the state is not required to show that the offender is able to carry out the threat or even that the offender intended to carry out the

threat. *State v. Salinger*, 12th Dist. Butler No. CA2014-10-208, 2015-Ohio-2821, ¶ 17. However, the state must show that the victim had a subjective belief of serious physical harm from the offender. *State v. Clemons*, 12th Dist. Butler No. CA2020-01-004, 2020-Ohio-5394, ¶ 33. Evidence of a person's belief that an offender will cause serious physical harm can be proven with circumstantial evidence. *Id.*

{¶ 27} Wing claims that his conviction was against the manifest weight of the evidence and not supported by sufficient evidence because S.D. initially testified that he could not remember if Wing had made any threats. However, the 9-1-1 recording captured Wing's threats. Upon hearing the call again, and further questioning, S.D. testified he "was afraid, really afraid. I thought he was going to hurt me," and that he was fearful for both his father's life and his own.

{¶ 28} Wing's aggravated menacing conviction was supported by sufficient evidence and the manifest weight of the evidence.

{¶ 29} Wing's first and second assignments of error are overruled.

{¶ 30} Assignment of Error No. 3:

{¶ 31} DEFENDANT WAS PROVIDED WITH INEFFECTIVE ASSISTANCE OF COUNSEL

{¶ 32} In his third and final assignment of error, Wing argues his trial counsel was ineffective because (1) he did not subpoena Sean Howard as a witness for the preliminary hearing in municipal court and (2) he failed to allege a defect in the complaint and/or indictment. Nevertheless, because Wing has failed to demonstrate any prejudice, we disagree.

{¶ 33} The failure to subpoena witnesses does not deny a defendant effective assistance of counsel absent a showing that the testimony of the witness would have assisted the defense. *State v. Reese*, 8 Ohio App.3d 202, 203 (1st Dist. 1982); *State v.*

*Hunt*, 20 Ohio App.3d 310, 312 (9th Dist. 1984). Here, the preliminary hearing concerned only the felonious assault charge which was ultimately no-billed by the grand jury. It had nothing to do with the two misdemeanor charges of which Wing was eventually convicted, and therefore Wing suffered no prejudice from not having Howard's testimony at the preliminary hearing.

{¶ 34} Wing also claims that trial counsel provided ineffective assistance by failing to allege a defect in the complaint and indictment, asserting that the original aggravated menacing complaint alleged that Denier, not S.D., was the victim. Wing attempts to support this claim by pointing to the preliminary hearing's focus on Wing's altercation with Denier rather than with S.D. However, as stated above, the preliminary hearing is only concerned with whether there is probable cause that a felony has been committed for purposes of binding the matter over to the grand jury. The misdemeanor charges were not the subject of the hearing.

{¶ 35} Ultimately, whether or not the original complaint alleged Denier was the victim of aggravated menacing would not have limited the grand jury from indicting Wing for aggravated menacing against S.D.

{¶ 36} Wing's third assignment of error is overruled.

{¶ 37} Judgment affirmed.

S. POWELL, P.J., and BYRNE, J., concur.